UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| HAROLD MILES, Personally and as Administrator for the Estate of TERRY MILES,<br><br>  Plaintiff,<br><br>V.<br><br>FEDERAL INSURANCE COMPANY,<br><br>  Defendant. | CIVIL ACTION NO. 5:16-CV-15-KKC<br><br><br><br>MEMORANDUM OPINION AND ORDER |

\*\*\* \*\*\* \*\*\*

Defendant Federal Insurance Company moved to dismiss certain claims contained in plaintiff Harold Miles' Complaint (DE 1) for failure to state a claim upon which relief can be granted. (DE 11). For the following reasons, the motion is **GRANTED**. Before entering a dismissal order, the Court will permit Miles an opportunity to amend the complaint within fourteen (14) days of this order.

**I. BACKGROUND**

On October 22, 2013, Terry Miles died of accidental positional asphyxia, or "accidental suffocation," an unintended consequence of what was not the first time Terry engaged in asphyxiation-inducing activities to derive pleasure. (Compl. ¶¶ 14, 25, 29). At the time of Terry's death, his father Harold Miles[1] was a participant in the Voluntary Accident Insurance Program Issued for Toyota Engineering &

---

[1] For the purpose of this Opinion, the Court will refer to Harold Miles as "Miles."

1

Manufacturing North America, Inc. ("the Policy"), a part of the Toyota Engineering & Manufacturing Health and Welfare Benefit Plan ("the Plan"). (Compl. ¶¶ 53–55; DE 11-2).[2] Miles was the Primary Insured Person and beneficiary of the Policy, which Federal underwrote, issued, and administered. (Compl. ¶¶ 8, 10–12). Terry was a dependent entitled to coverage under the Plan and Policy. (Compl. ¶ 12).

> The Policy provided:
>
> **Subject to all the terms and conditions of this policy and the payment of premium, We will provide the following insurance:**
>
> **Accidental Death and Dismemberment**
>
> **We** will pay the applicable **Benefit Amount**, shown in Section IV-B of the Schedule of Benefits, if an **Accident** results in a covered **Loss** not otherwise excluded. The **Accident** must result from an insured **Hazard** and occur while an **Insured Person** is insured under this policy, while it is in force. The covered **Loss** must occur within one (1) year after the **Accident**.

(Compl. Ex. 2, at 1–2) (capitalization and emphasis in original). The Policy placed limits on what it would cover, excluding "any Accident, Accidental Bodily Injury, or Loss caused by or resulting from, directly or indirectly, an Insured Person's suicide, attempted suicide or intentionally self-inflicted injury." (Compl. Ex. 2, at 2).

After Terry's death, Miles submitted a claim to Federal under the Plan and Policy seeking to recover benefits. (Compl. ¶ 18–19). Federal denied the claim. In the May 19, 2014 letter denying Miles' claim, Federal, through its adjuster, Crawford

---

[2] Plaintiff does not identify the plan or policy by name in the complaint and did not attach the policy as an exhibit to the complaint. The Complaint does refer to "the plan" and asserts ERISA provisions as being the enforcement mechanism for his claims. (Compl. ¶¶ 53–55). Federal has provided a copy of the Policy in its motion to dismiss. (DE 11-2). Plaintiff does not dispute that the policy provided by Federal is indeed the applicable policy here.

2

U.S. Property & Casualty, stated that the policy requirements for coverage for accidental loss of life were not satisfied because Terry's death "was the result of his voluntarily placing a cord around his neck." (Compl. Ex. 2, at 2). The letter continued:

> This was confirmed by the received death certificate which confirmed [Terry's] death was due to suffocation from a cord around his neck and conversation with Coroner John P. Goble. . . . While we recognize that [Terry's] death certificate states that his death was an accident, even if we were to assume (solely for the purposes of this analysis) that this deduction is plausible, we fail to see how such circumstances demonstrate that an Accident [as defined in the Policy] caused an accidental death, since it has been confirmed that the placing of the cord around his neck by [Terry] was voluntary, which is not the direct result of an Accident or Accidental Bodily Injury.

(Compl. Ex. 2, at 2–3).

Miles appealed the denial on July 11, 2014, (Compl. ¶ 19), and Federal once again denied Miles' benefits two months later, reaffirming its decision that Terry's death was not an accident as defined in the Policy and that the Suicide or Intentional Injury exclusion precluded any coverage for Miles' claim. (Compl. Ex. 5). Miles filed a second "voluntary" appeal, in which he included a written statement from John Goble, the Scott County Coroner, indicating that Terry's death was accidental. (Compl. ¶ 20–21). The stated purpose of the letter was to "clarify and correct the misunderstanding and misinformation contained in the May 19, 2014 [Insurance Denial] letter." (Compl. ¶ 20). Federal did not respond to Miles' "voluntary" appeal. (Compl. ¶ 21).

Miles now seeks relief from this Court pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA") for what he claims is a wrongful denial of benefits under the Policy, an ERISA welfare benefit program.

3

Miles' complaint asserts various claims under ERISA; one as a claim for benefits under ERISA § 502(a)(1)(B) styled as "breach of contract," (Compl. ¶¶ 46–51) and others under § Section 502(a)(3) styled as "breach of fiduciary duty" and "disgorgement." (Compl. ¶¶ 52–54, 55–58).

Federal moved to dismiss certain claims made by Miles for failure to state a claim upon which relief may be granted. (DE 11). In his response to Federal's motion to dismiss, Miles voluntarily withdrew his claims under ERISA § 502(a)(3). (DE 17, at 1). Miles maintains his claim for benefits under § 502(a)(1)(B), arguing that Federal, through its adjuster, Crawford U.S Property & Casualty, improperly denied the claim because "Federal [] denied Mr. Miles'[] claim for death benefits solely on its opinion that his death was an intentional suicide." (Compl. ¶ 31).

## II. DISCUSSION

At this procedural stage, the sole issue before the Court is whether the complaint is sufficient to state a claim for benefits under ERISA § 502(a)(1)(B). That is, the Court must determine whether Miles has met his procedural burden in opposing a motion to dismiss. Because Miles' claim for relief as stated in his complaint is contradicted by documents upon which his pleadings rely and because his pleading is otherwise contrary to standards of *Twombly* and *Iqbal*, Federal is entitled to dismissal under Fed. R. Civ. P. 12(b)(6).

### a. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Under Rule 12(b)(6), the Court must dismiss a complaint

4

that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, a plaintiff must plead such facts to allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556).

The Court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Id.* at 678 (citing *Twombly*, 550 U.S. at 570); *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (citing *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009)). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see also Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (quoting *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009) ("[The Court] need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."). Moreover, the Court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Williams v. CitiMortgage, Inc.*, 498 Fed. App'x 532, 536 (6th Cir. 2012) (per curiam) (citing *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001)); *Flint v. Beshear*, No. 3:15-cv-777-DJH, 2016 WL 154131, at *2 (W.D. Ky. Jan.

12, 2016) (citing the same); s*ee also Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (stating a district court need not accept "unwarranted factual inferences" as true).

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

In conjunction with Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

b. Application

The Court begins where *Iqbal* instructs it to: by identifying those factual assertions that, because they are no more than conclusions, are not entitled to the assumption of truth. See *Iqbal*, 556 U.S. at 679, 681. Miles alleges that Federal used "insurance reviewers who have shown a high, if not absolute, propensity of supporting

its decision to deny claims, including Mr. Miles (sic) claim," (Compl. ¶ 38) and that Federal's personnel are "trained to automatically accept the opinions of their own paid medical and liability reviewers, without question or further investigation of the paid findings and conclusions." (Compl. ¶ 40). While perhaps consistent with Miles' theory that Federal improperly denied him benefits, these statements are merely conclusory allegations unsupported by any other factual assertion that would allow this Court to draw a reasonable inference that Federal is liable. Far from—as Miles puts it—"shot gun[ning] various stylistic components," (DE 17, at 5), the Court must exclude those "'naked assertion[s]' devoid of 'further factual enhancement'" that do not satisfy the pleading rules. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Therefore, the Court will not assume the veracity of these assertions in analyzing Miles' complaint.

Notwithstanding these conclusory statements, Miles' only remaining claim is a claim for benefits. Under ERISA § 502(a)(1), "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under terms of his plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Styled as a "breach of contract," Miles essentially alleges that he is entitled to recover benefits as a result of his son's death and that Federal improperly denied his claim in violation of the Policy. Miles avers that this "breach" occurred when Federal:

   a. improperly denied Mr. Miles's (sic) claim for death benefits;
   b. failed to have Mr. Miles's (sic) claim reviewed by a Physician, Pathologist, Coroner, or similar forensic medical professional investigator, but instead relied on unlicensed medical opinions, conjecture and speculation based on a single phone call; and

7

  c. applied a policy provision (requiring a 2nd appeal) prohibited by law.

(Compl. ¶ 49).

  Federal argues that parts (b) and (c) of the alleged "breach of contract," as pleaded, must be dismissed because they are claims for which the Court can provide no relief. Miles contends that these claims cannot be dismissed because they allow the Court to draw an inference that the defendant is liable for the misconduct alleged. (DE 17, at 5). However, even if the Court assumes the veracity of allegations (b) and (c), it still has to determine "whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. They clearly do not.

  Miles' claim that Federal improperly denied his benefits claim when it failed to have the claim "reviewed by a Physician, Pathologist, Coroner, or similar forensic medical professional investigator" and instead relied on "unlicensed medical opinions, conjecture and speculation based on a single phone call" (Compl. ¶ 49) is not one upon which this Court can grant relief. For starters, Miles' complaint does not point to any Policy provision that would make such a review mandatory in his case. The most the Policy provides, as Federal points out, is that Federal "*may* also have an autopsy done by a Physician, unless prohibited by law. (DE 11, Ex. A, at 48) (emphasis added). The language is not mandatory. Therefore, it makes little difference for Miles to assert that Federal relied on "unlicensed medical opinions, conjecture and speculation" here because Miles does not show what Federal had to rely on when making its determination. For there to be a "breach" of the Policy, Federal must violate a specific provision. Federal cannot breach the Policy by not doing something the Policy does not require. *See Lipker v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012) (quoting

8

*Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011)) ("When interpreting ERISA plan provisions, general principles of contract law apply; unambiguous terms are given their 'plain meaning in an ordinary and popular sense.'"). Without a "breach," this is not a claim upon which a court can grant relief.

Similarly, Miles' claim that Federal "applied a policy provision (requiring a 2nd appeal) prohibited by law" is also a claim upon which no relief can be granted. No Policy provision requires Federal to review Miles' claim for a second time. The May 19, 2014 letter provided an initial sixty days to appeal the decision. (Compl. Ex. 4). Miles followed the instruction and appealed. The September 8, 2014 letter denying Miles' first appeal specifically provided: "If you are not satisfied with the Committee's decision in this matter, you have the right to bring an action under section 502(a) of ERISA." (Compl. Ex. 3). The letter does not direct Miles to file another appeal. If anything, it told him to go to court if he was not satisfied. Therefore, to the extent Miles' claim that Federal improperly denied benefits relies on an alleged breach of policy provision requiring a second appeal, it must fail because the claim is not one upon which relief can be granted.

The last breach alleged by Miles occurred when Federal "improperly denied Mr. Miles's (sic) claim for benefits." (Compl. ¶ 49). As currently pled, this "breach" is predicated upon a single theory: Federal wrongfully denied the claim for benefits because it exclusively based its denial on a misplaced belief that coroner John Goble told Federal that Terry's death was a suicide. (Compl. ¶ ¶ 18, 49; DE 17, at 2) ("The

9

Complaint alleges that it was upon this single piece of factual evidence (the false claim that John Goble told Federal it was a suicide) that Federal denied the death benefit to the Estate of Terry Miles. Despite relying exclusively on their misplaced belief of the opinion of John Goble (which was not true), Federal still denied the claim."). Put another way, Miles alleges that Federal "denied [his] claim for death benefits based solely on its opinion that [Terry's] death was intentional suicide." (Compl. ¶ 31). As Federal acknowledges, that is a viable theory.

But to prevail on that theory, the complaint must contain facts showing that such a legal theory is plausible. That a claim is plausible depends, in part, on the veracity of the facts upon which plaintiff relies. While Federal Rule of Civil Procedure 8(d)(2) permits a party to plead in the alternative and Rule 8(d)(3) permits separate claims regardless of consistency, a court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely . . ." *Williams*, 498 Fed. App'x at 536 (per curiam) (citing *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d at 405–06). "Indeed, if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document." *Nat'l Ass'n of Minority Contractors, Dayton Chapter v. Martinez*, 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002). Miles' complaint fails to sufficiently plead a plausible claim for relief because the complaint is mired with factual contradiction that undercuts his allegation of a "breach."

Miles maintains that his son never intended to die on the day in question, (Compl. ¶¶ 25, 29), and that Scott County Coroner John Goble later confirmed that the cause of death was accidental, stating that he was "aware of no evidence at the scene or that was uncovered by investigating agencies . . . that Terry Miles intended to kill himself." (Compl. Ex. 4). None of Federal's denial letters dispute that. In fact, the May 19, 2014 letter attached to the complaint expressly relied on the death certificate's assessment that the death was accidental and assumed that fact for the purpose of its analysis. (Compl. Ex. 2) ("While we recognize that [Terry's] death certificate states that his death was an accident we fail to see how such circumstances demonstrate that an Accident [as defined in the Policy] caused an accidental death. . . ."). (Compl. Ex 2).

What the denial letters do dispute is Miles' assertion that "Federal [] denied [his] claim for death benefits *solely* on its opinion that [Terry's] death was an intentional suicide." (Compl. ¶ 31) (emphasis added). The same May 19 denial letter, after "assum[ing] [] solely for the purposes of analysis that [Terry's death] was an accident," went on to deny Miles' claim for benefits because "it has been confirmed that the placing of the cord around his neck by [Terry] was voluntary, which is not the direct result of an Accident or Accidental Bodily Injury." (Compl. Ex. 2). The denial resulted because the loss was subject to the "policy exclusion for loss caused by or resulting from Suicide or *Intentional Injury*." (Compl. Ex. 2) (emphasis added). Federal's denial is not based only on a claim that Terry committed suicide.

11

The September 8, 2014 letter, attached as Exhibit 3, reads the same; it does not state that Federal denied Miles' benefits claim based on an alleged suicide. Instead, it contains the following: "While it is apparent that [Terry's] motive in doing so was to derive heightened pleasure, he nevertheless intentionally engaged in activity that involved injury or death as a foreseeable consequence." (Compl. Ex. 3). It then states that Federal concluded "(1) [Terry's] death was not an accident resulting in a Loss not otherwise excluded by the Policy; and (2) the Suicide or *Intentional Injury* exclusion precludes coverage for this claim." (Compl. Ex. 5). (emphasis added).

Thus, contrary to Miles' assertions, it is clear that Federal did not deny Miles' claim for death benefits solely based on a determination that Terry Miles' death was a suicide. Miles' own exhibits explicitly contradict this telling of the facts.

Furthermore, Miles' response to Federal's motion to dismiss does little except to double down on his assertion that his claim is properly pleaded. Miles makes much of the importance of Goble's determination that Terry did not commit suicide and points to portions in the May 19, 2014 denial letter that purportedly denies Miles' claim based solely on grounds that Terry committed suicide. (DE 17, at 1). But, as established above, this argument ignores the fundamental issue: his complaint (and the theory for "breach" it espouses) and the very exhibits he proffers in support tell two different stories. Accordingly, the Court need not accept Miles' rendition of the contradicted facts as true. *See Williams*, 498 Fed. App'x at 536 (per curiam) (citing *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d at 405–06).

To say so is not to ignore all of Miles' factual assertions. As Miles correctly points out, the Court must consider the complaint as a whole. (DE 17, at 2–3). But even accepting as true many of Miles' factual statements, including that Federal only called Goble before rendering its decision to deny Miles' benefits claim (Compl. ¶¶ 33–37) or that Federal's decision was based on a misunderstanding of what Goble said concerning the cause of Terry's death (Compl ¶¶ 14–16, 19; DE 17, at 2), the complaint still does not plausibly allege that Federal wrongfully denied Miles' benefits because the complaint is lacking where it matters.  The facts do not support Miles' only claim that Federal denied his benefits solely on the grounds that Terry's death was a suicide. (Compl. ¶¶ 18, 31, 49; DE 17, 1–2). Without more, this is a claim upon which relief cannot be granted.

### III. CONCLUSION

Discovery and later stages of this case may ultimately establish that Federal improperly denied Miles' claim for benefits under ERISA § 502(a)(1)(B). This opinion is no way portends the final outcome. However, at present, the allegations in the complaint are insufficient to allow Miles to survive a motion to dismiss at the pleading stage of this case. Miles' complaint does not contain the requisite factual allegations sufficient to plausibly suggest that Federal improperly denied Miles benefits under the Policy. Specifically, though Miles alleges that Federal denied him benefits based on a mistaken belief that his son committed suicide, Miles' own complaint undermines the very legal theory he posits because the complaint and documents upon which the complaint relies show that Federal did not deny Miles' benefits on

13

the belief that Terry committed suicide. That said, the Court further determines that Miles should be afforded an opportunity to amend to attempt to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Accordingly, the defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim (DE 11) is **GRANTED**; however, before the Court enters a dismissal order, plaintiff will be afforded fourteen (14) days from the date of this order to file an amended complaint.

**IT IS SO ORDERED**.

Dated February 10, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY